Mark D. Tolman (Utah Bar No. 10793)
JONES WALDO HOLBROOK & MCDONOUGH, PC
170 S. Main Street, Suite 1500
Salt Lake City, UT 84101
(801) 521-3200
mtolman@joneswaldo.com

 *and*

Chad D. Hansen (pending *pro hac vice* application)
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC 27101
(336) 607-7308
chad.hansen@kilpatricktownsend.com

*Attorneys for Defendant Blue Cross and Blue*
*Shield of North Carolina and the Blue Options PPO*

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CARL A. BOGGS, III and LEAH BOGGS, | Case No. 2:20-cv-00632-DBB-CMR |
| Plaintiffs, | **MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE OR, IN THE ALTERNATIVE, TO TRANSFER VENUE OR DISMISS FOR FAILURE TO STATE A CLAIM, AND MEMORANDUM IN SUPPORT** |
| vs. | |
| BLUE CROSS AND BLUE SHIELD OF NORTH CAROLINA, and BLUE OPTIONS PPO, | |
| Defendants. | |

1727966.1

Defendants Blue Cross and Blue Shield of North Carolina ("Blue Cross NC") and Blue Options PPO ("PPO") respectfully move to dismiss the Complaint under Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure ("Rules") or, alternatively, to transfer this action to the United States District Court for the Middle District of North Carolina under 28 U.S.C. § 1404(a). Should the Court decline to dismiss the Complaint, Defendants respectfully move the transferee court or this Court, if it declines to transfer venue, to dismiss the Complaint under Rule 12(b)(6).

## PRECISE RELIEF SOUGHT AND SPECIFIC GROUNDS FOR RELIEF

This ERISA action involves a dispute over the denial of benefits for treatment that Plaintiff Leah Boggs ("Leah"), a North Carolina resident, received at Open Sky Wilderness ("Open Sky") in Colorado. Plaintiffs allege that Leah is covered under a health plan in which her father, Plaintiff Carl A. Boggs, III ("Carl"), also a North Carolina resident, participates through his employer, a North Carolina company. None of the parties have *any connection* to Utah. Plaintiffs do not reside or work in Utah. Leah did not receive treatment in Utah. Plaintiffs did not submit any benefit claims in Utah. Instead, both Plaintiffs reside in *North Carolina*. Leah was treated in *Colorado.* The health plan at issue was issued and administered in *North Carolina*.

This Court lacks personal jurisdiction over Defendants. The Complaint is devoid of allegations as to Blue Cross NC's involvement in the facts of this case, let alone any connection to Utah. Contrary to Plaintiffs' conclusory allegation that Blue Cross NC "does business in the State of Utah" because Blue Cross Blue Shield does business nationwide, Blue Cross NC is a North Carolina corporation and independent licensee of the Blue Cross

1

1727966.1

and Blue Shield Association. It has no employees, offices, facilities, bank accounts, assets, or operations in Utah. Plaintiffs have also named as "the Plan," the PPO, which is an insurance product incapable of being sued. The PPO is a product through which individuals covered under a health plan that has selected the PPO for coverage gain access to Blue Cross NC's network of healthcare providers. Because Defendants have *no* Utah connection, dismissal is proper under Rule 12(b)(2).

Defendants also seek dismissal under Rule 12(b)(3). Venue is improper under 29 U.S.C. § 1132(e)(2) where the plan is administered in North Carolina, Plaintiffs reside in North Carolina, and personal jurisdiction over Defendants is lacking.

Alternatively, Defendants move under 28 U.S.C. § 1404(a) to transfer this case to the U.S. District Court for the Middle District of North Carolina, the most appropriate and convenient venue for this case.

Further, Defendants respectfully move the transferee court (or, this Court if it declines to transfer venue) to dismiss the Complaint under Rule 12(b)(6) because Plaintiffs (1) fail to allege sufficient facts to state a denial-of-benefits claim, (2) fail to allege any conduct by Blue Cross NC establishing a plausible claim, (3) have sued an insurance product instead of a benefit plan, and (4) fail to allege sufficient facts to support a claim under the Mental Health Parity and Addiction Equity Act of 2008, 29 U.S.C. § 1185a (the "Parity Act").

2

## STATEMENT OF FACTS

### I.  PLAINTIFFS HAVE NO CONNECTION TO UTAH.

Plaintiffs reside in Monroe, North Carolina. (Compl. ¶¶ 1-2.) Carl, through his employer Boggs Paving, Inc. ("Boggs Paving"), participates in a health benefit plan (*Id.* ¶ 1.) Boggs Paving is a North Carolina corporation with its principal place of business in Monroe, North Carolina that provides land clearing, grading, storm draining, sanitary utilities, and paving services in North and South Carolina. (Charbonneau Decl. Ex. A.) It is not registered to business in Utah.[1] (*Id.* Ex. B.) Boggs Paving offers its employees and their families, including Plaintiffs, health benefits through an employee benefits plan (the "Boggs Plan"). (Compl. ¶¶ 1-2, 4; Dawson Decl. ¶ 10.) Boggs Paving is the sponsor for the Boggs Plan. (Dawson Decl. ¶ 13.)

Leah is a beneficiary of the Boggs Plan. (Compl. ¶ 2.) Plaintiffs allege that Leah was treated from July 14, 2017 through September 27, 2017, at Open Sky, a residential treatment facility in Colorado. (*Id.*) Other than Plaintiffs' unilateral selection of Denials Management, Inc. ("DMI"), a corporation "located in Salt Lake City, Utah," to write their appeals to "the Plan," Plaintiffs have not alleged that this case has any connection with Utah. (*See* Compl. ¶ 3.)

### II.  BLUE CROSS NC, THE PPO, AND THE PLAN HAVE NO LINK TO UTAH.

Blue Cross NC is a North Carolina corporation headquartered in Durham, North Carolina. (Dawson Decl. ¶ 4.) It is an independent licensee of the Blue Cross and Blue

---

[1] Boggs Paving has changed its name to Boggs Contracting, Inc. (Charbonneau Decl. Ex. C; *id.* Ex. D (identifying Carl as Boggs Paving's former registered agent).) For simplicity, Defendants refer to Boggs Contracting as Boggs Paving for purposes of this Motion.

3

Shield Association, an association of independent Blue Cross and Blue Shield Plans. (*Id.*) Blue Cross NC has no employees, offices, facilities, bank accounts, assets, or operations in Utah. (*Id.* ¶ 5) Blue Cross NC is licensed to do business only in North Carolina. (*Id.*) The PPO is a preferred provider organization offered by Blue Cross NC, for which Blue Cross NC contracts with North Carolina providers and facilities to render services to members and beneficiaries in North Carolina. (*Id.* ¶¶ 8-9.)

Boggs Paving secured health plan benefits for its employees from Blue Cross NC by entering into a group contract for Blue Cross NC to provide health benefits to members and beneficiaries of the Boggs Plan in accordance with the Benefit Booklet attached to the Group Contract. (*Id.* ¶ 13.) Boggs Paving was the Boggs Plan sponsor. (*Id.*) By Plan design, Boggs Paving participants received health insurance benefits through Blue Options 1-2-3, not the PPO,[2] giving them access to a broad group of in-network health care providers at various specified benefit levels. The contract between Boggs Paving and Blue Cross NC was executed and delivered entirely in North Carolina. (*Id.* ¶ 12.) The Boggs Plan has only been administered in North Carolina. (*See id.* ¶¶ 7, 10, 13.) For the Boggs Plan, Blue Cross NC has never: received any premium contributions from anyone residing in Utah; had a participant submit claims for treatment received in Utah; sent any benefit payments to Utah; reviewed or denied any claims for services provided in Utah; negotiated or entered

---

[2] The Boggs Plan selected Blue Options 1-2-3 as the insurance product under which its members would be covered rather than the PPO named in the Complaint. (*Id.* ¶ 13.) However, for purposes of this Motion, it makes little difference because both the PPO and Blue Options 1-2-3 are insurance products, not entities capable of being sued. *Infra* Part IV.D.

4

1727966.1

into any third-party administration contracts with any party in Utah; or entered into any contracts in Utah. (*Id.* ¶ 14.)

### III.   ALLEGATIONS ABOUT LEAH'S TREATMENT AND PLAINTIFFS' APPEALS.

Plaintiffs allege that Leah received treatment at Open Sky in Colorado from July 14, 2017 to September 27, 2017. (Compl. ¶¶ 2, 17.) Leah then returned to North Carolina and continued outpatient therapy in North Carolina. (*Id.* ¶ 18; Charbonneau Decl. Ex. E.) Blue Cross NC was unaware of and did not pre-approve Leah's treatment at an out-of-state facility. (Dawson Decl. ¶ 15.)

Plaintiffs submitted a claim to Blue Cross NC for Leah's treatment at Open Sky, which the plan denied. (*See* Compl. ¶ 19.) Carl appealed the denial. (*Id.* ¶ 20.) The denial was upheld by Magellan Healthcare, a third-party intermediary in Alpharetta, Georgia to whom Blue Cross NC delegates responsibility for first-level appeals and to whom members and beneficiaries are directed to submit their appeals. (*Id.* ¶¶ 20, 23; McFall Decl. ¶¶ 5, 9.) Carl then submitted a level-two member appeal. (Compl. ¶ 32.) Plaintiffs do not allege the outcome of that appeal.

### ARGUMENT

### I.   THE COMPLAINT IS SUBJECT TO DISMISSAL FOR LACK OF PERSONAL JURISDICTION.

The Court's exercise of personal jurisdiction over Defendants would not comport with Due Process because Defendants have no connection with the forum.

#### A.   LEGAL STANDARD

Rule 12(b)(2) allows a party to assert by motion the defense of lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "The allegations in the complaint must be taken as

5

true" only "to the extent they are uncontroverted by the defendant's affidavits." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (internal quotations omitted). The Court may consider matters outside the pleadings without converting the motion to one for summary judgment. Fed. R. Civ. P. 12(d).

In federal question cases, courts analyze two factors to determine whether personal jurisdiction exists: "(1) 'whether the applicable statute potentially confers jurisdiction' by authorizing service of process on the defendant and (2) 'whether the exercise of jurisdiction comports with due process'" under the Fifth Amendment. *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000) (quoting *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997)).

"[T]he Fifth Amendment 'protects individual litigants against the burdens of litigation in an unduly inconvenient forum.'" *Id.* at 1212 (quoting *Republic of Panama*, 119 F.3d at 945). To show that a forum is so unduly inconvenient that it implicates due process, "a defendant must first demonstrate 'that his liberty interests actually have been infringed.'" *Id.* (quoting *Republic of Panama*, 119 F.3d at 946). If a defendant meets this standard, jurisdiction is proper "only if the federal interest in litigating the dispute in the chosen forum outweighs the burden imposed on the defendant." *Id.* at 1213 (quoting *Republic of Panama*, 119 F.3d at 948).

1727966.1

## B. REQUIRING DEFENDANTS TO LITIGATE IN UTAH WOULD INFRINGE UPON DEFENDANTS' LIBERTY INTERESTS.

The first factor is uncontested as Section 1132(e)(2) authorizes nationwide service of process. 29 U.S.C. § 1132(e)(2); *Peay*, 205 F.3d at 1210. However, the exercise of personal jurisdiction over Defendants plainly violates due process.

Courts consider the following factors in assessing whether litigating in a particular forum would infringe upon a party's Fifth Amendment liberty interests:

> (1) the extent of the defendant's contacts with the place where the action was filed; (2) the inconvenience to the defendant of having to defend in a jurisdiction other than that of his residence or place of business, including (a) the nature and extent and interstate character of the defendant's business, (b) the defendant's access to counsel, and (c) the distance from the defendant to the place where the action was brought; (3) judicial economy; (4) the probable situs of the discovery proceedings and the extent to which the discovery proceedings will take place outside the state of the defendant's residence or place of business; and (5) the nature of the regulated activity in question and the extent of impact that the defendant's activities have beyond the borders of his state of residence or business.

*Peay*, 205 F.3d at 1212. Each factor weighs against exercising personal jurisdiction.

### 1. Defendants Have No Contact with Utah.

The first factor is satisfied if a defendant has some contact with the district.

Courts often find that the defendant's pre-certification of or payment for treatment *in Utah* or other direct involvement with Utah establishes the necessary contact. *Richard T.B. v. United Healthcare Ins. Co.*, No. 2:18-cv-73, 2019 WL 145736, at *2 (D. Utah Jan. 9, 2019) (unpublished) (defendant processed claims at its claims-processing center in Utah); *D.K. v. United Behavioral Health*, No. 2:17-cv-01328, 2018 WL 5281467, at *2 (D. Utah Oct. 24, 2018) (unpublished) (plaintiffs directed to submit claims and appeals to a Utah mailing address); *Bruce R. v. United Behavioral Health*, No. 2:18-cv-00003, 2018

[WL 10232936, at \*2 (D. Utah June 1, 2018) (unpublished)](#) (defendant processed plaintiff's claim through its Utah facility); [*Gail F. v. QualCare, Inc.*, No. 1:15-cv-00130-DN, 2017 WL 589112, at (D. Utah Feb. 14, 2017) (unpublished)](#) (defendant authorized and paid for plaintiff's care in Utah). In [*Peay*](#), for instance, the requisite contact was the pre-certification for and payment of medical treatment within the pertinent judicial district. [205 F.3d at 1213](#).

In stark contrast, Plaintiffs do not allege that Defendants had *any* contact with Utah. The first, and most important, [*Peay*](#) factor weighs heavily against exercising jurisdiction over Defendants.

### 2. Inconvenience, Judicial Economy, and the Probable Situs of Discovery Weigh Against the Exercise of Jurisdiction.

The second, third, and fourth [*Peay*](#) factors—inconvenience, judicial economy, and the situs of discovery—all weigh against the exercise of personal jurisdiction.

This matter is pending in Utah. Yet Plaintiffs, Defendants, and the Boggs Plan are in North Carolina, more than 1,800 miles away.[3] All Blue Cross NC employees who manage and handle payment of approved benefits claims under the Boggs Plan—the potential witnesses in this action—are in North Carolina. (Dawson Decl. ¶ 21.) Individuals working on behalf of Magellan who may be potential witnesses are not located in Utah. (*Id.*; McFall Decl. ¶¶ 5-6.) Thus, the situs of discovery is largely, if not entirely, in the Middle District of North Carolina.

---

[3] Geography is "susceptible to judicial notice …." [*United States v. Piggie*, 622 F.2d 486, 488 (10th Cir. 1980)](#).

1727966.1

Traveling to and from Utah would pose a significant burden for the witnesses who may be called at trial and Defendants' regular counsel, nearly all of whom are North Carolina residents and none of whom reside in Utah.[4] (Dawson Decl. ¶ 21.) A non-stop flight from Raleigh, North Carolina to Salt Lake City takes nearly five hours.[5] With travel to the airport, going through security, waiting for the flight, taxiing, and ground transportation after landing, it takes approximately seven hours (or more, with delays or if a nonstop flight is unavailable) for counsel and witnesses just to get to court,[6] and another seven hours to travel home.[7]

Defendants have no access to Utah-based counsel with pre-existing knowledge of their operations as Defendants' regular counsel is in North Carolina.[8] (*Id.* ¶¶ 17-19.) Counsel's travel to and from Utah would impose a significant burden on Defendants and the Court. It would make scheduling hearings inconvenient and would be unduly expensive for Defendants. *Med Flight*, 2017 WL 5634116, at *9. Counsel's travel to and from each

---

[4] Not all ERISA denial-of-benefit cases are decided on the administrative record. *See, e.g., Med Flight Air Ambulance, Inc. v. MGM Resorts Int'l*, No. 17-CV-0246 WJ/KRS, 2017 WL 5634116, at *6 (D.N.M. Nov. 22, 2017) (unpublished) (counsel's and witnesses' locations "weigh[ed] considerably against the Court's exercise of jurisdiction").

[5] Flight times are verifiable with certainty by simply reviewing the websites of airlines. *In re Telluride Income Growth LP*, 364 B.R. 407, 414 (B.A.P. 10th Cir. 2007) (matters that are verifiable with certainty are proper for judicial notice).

[6] It is generally known and accepted that travel time includes not only flight time, but also travel to the airport, going through security, and navigating baggage and ground transportation upon arrival. These facts are therefore appropriate for judicial notice. *Spillway Marina, Inc. v. United States*, 445 F.2d 876, 878 (10th Cir. 1971) ("Courts take judicial notice of facts which are generally known and accepted.")

[7] To the extent Plaintiffs argue that witnesses or counsel could fly from the Charlotte Douglas International Airport, flights from Charlotte to Salt Lake City are only about 15 minutes shorter, but it would require additional travel time to and from the Charlotte airport to fly to Utah.

[8] The Court should not give any weight to the fact that Defendants having engaged local counsel. They were required to do so to be represented before this Court solely because Plaintiffs filed suit in Utah. *Med Flight*, 2017 WL 5634116, at *6 (accepting as "abundantly obvious" defendant's statement that "*the only reason [it] was forced to retain counsel licensed to practice in New Mexico is because Plaintiff filed suit in New Mexico*" (emphasis in original)).

1727966.1

hearing would cost Defendants' several thousand dollars in fees and costs even *before* factoring in overnight accommodations and other routine expenses.

### 3. The Nature of the Regulated Activity Does Not Weigh in Favor of Exercising Jurisdiction.

The fifth *Peay* factor, the localized nature of the regulated activity, also weighs against exercising jurisdiction over Defendants as Blue Cross NC operates exclusively in North Carolina and the Boggs Plan is administered in North Carolina and only has members in North and South Carolina. (Dawson Decl. ¶¶ 5, 7-9.)

Boggs Paving operates in North and South Carolina. (Charbonneau Decl. Ex. A.) The Boggs Plan, its administrators, and employees are all located in the Carolinas. (*Id.*; *see also* Dawson Decl. ¶ 11.) Approved claims for health benefits are paid on behalf of the Boggs Plan from North Carolina or by Blue Cross NC vendors who are not located in Utah. (Dawson Decl. ¶ 7.) Blue Cross NC is a North Carolina corporation that, contrary to Plaintiffs' allegations, does *not* conduct any business in Utah. (*Id.* ¶¶ 4-5.) Blue Cross NC operates under a license from the State of North Carolina and operates only in North Carolina. (*See id.* ¶ 5.) Accordingly, the fifth *Peay* factor weighs against the exercise of jurisdiction over Defendants.

In sum, all five *Peay* factors weigh against this Court's exercise of personal jurisdiction over Defendants. The absence of any connection between Defendants and Utah renders litigation in this forum so unduly burdensome, unfair, and inconvenient as to infringe upon the liberty interests of Defendants.

**C. THE BURDENS ON DEFENDANTS OUTWEIGH ANY PURPORTED FEDERAL INTEREST OF LITIGATING IN UTAH.**

The federal interest in litigating this case in Utah, which bears no connection to the operative facts, does not outweigh the significant burdens on Defendants.

In deciding whether the federal interests outweigh the infringement of a defendant's liberty, courts consider "the federal policies advanced by the statute, the relationship between nationwide service of process and the advancement of these policies, the connection between the exercise of jurisdiction in the chosen forum and the plaintiff's vindication of his federal right, and concerns of judicial efficiency and economy." *Peay, 205 F.3d at 1213* (quoting *Republic of Panama*, 119 F.3d at 948).

The only federal interest here is ERISA. Although ERISA authorizes nationwide service, which is some basis for jurisdiction, "due process requires something more." *Peay, 205 F.3d at 1211*; *see also Walter B. v. Kaiser Found. Health Plan, Inc.*, No. 1:08-CV-00074, 2008 WL 11509906, at *2 (D. Utah Nov. 26, 2008) (unpublished) ("While ERISA may allow for national service of process, that was not intended to provide a vehicle for all plaintiffs nationwide to bring their claims in any district they deem most favorable.").

Here, there is no "something more." Neither the Defendants nor the Plaintiffs themselves have any connection whatsoever to Utah. Simply put, there is no federal benefit to litigating this case in Utah. Even if there were, any hypothetical benefit would be outweighed by the gross constitutional unfairness of requiring Defendants to litigate in a distant forum that bears no connection to the issues, parties, or potential witnesses this case. *See Med Flight*, 2017 WL 5634116, at *10.

11

Accordingly, this Court lacks personal jurisdiction over Defendants.

## II. DISMISSAL IS WARRANTED BECAUSE VENUE IS IMPROPER.

This action is also subject to dismissal under Rule 12(b)(3) because Plaintiffs have filed their claims in an improper venue under 29 U.S.C. § 1132(e)(2).

### A. LEGAL STANDARD

Rule 12(b)(3) allows a party to assert by motion the defense of improper venue. Fed. R. Civ. P. 12(b)(3). Under Rule 12(b)(3), Plaintiffs bear the burden of establishing that "venue is proper as to each claim and as to each defendant." *Ewert v. Netpulse*, No. 2:17-CV-995-CW-BCW, 2018 WL 4083009, at *3 (D. Utah June 22, 2018) (unpublished) (quoting *Gwynn v. TransCor Am., Inc.*, 26 F. Supp. 2d 1256, 1261 (D. Colo. 1998)). On a Rule 12(b)(3) motion, the Court may consider facts outside the pleadings. *Hugger-Mugger, L.L.C. v. Netsuite, Inc.*, No. 2:04-CV-592TC, 2005 WL 2206128, at *3 (D. Utah Sept. 12, 2005) (unpublished). "If the defendant provides evidence that controverts the allegations in the complaint, the plaintiff must produce admissible evidence to counter the defendant's evidence." *Id.*

### B. VENUE IS IMPROPER UNDER EACH PRONG OF THE VENUE STATUTE.

Under ERISA, venue is proper in a district where (1) the plan is administered, (2) the breach took place, or (3) a defendant resides or may be found…." 29 U.S.C. § 1132(e)(2). Plaintiffs allege that venue is proper under 29 U.S.C. §§ 1132(e)(2) and 1391(c)[9] "because the Defendants do business in the State of Utah and the appeals were

---

[9] Defendants presume Plaintiffs intended to cite 28 U.S.C. § 1391(c), and address that statute herein instead of 29 U.S.C. § 1391(c).

Case 1:22-cv-00084-TDS-JEP   Document 7   Filed 02/22/21   Page 13 of 26

written by a company located in Salt Lake City, Utah." (Compl. ¶ 5.) Plaintiff's first assertion is untrue. The second is irrelevant.

Plaintiffs do not (and cannot) contend the Boggs Plan is administered in this district. Blue Cross NC made decisions about coverage for Leah's treatment in North Carolina and Magellan's personnel involved in the appeal are not located in Utah. (Dawson Decl. ¶¶ 7, 14, 21.) Thus, venue is not proper under the first prong. *Danny P. Catholic Health Initiatives*, No. 1:14-cv-00022-DN, 2015 WL 164183, at *3 (D. Utah Jan. 13, 2015) (unpublished) (proper venue in Utah doubtful where parties' reside in another state where coverage decisions were made).

Plaintiffs also cannot establish proper venue under the second prong because "[t]he breach of an ERISA plan occurs at the place the policy holder resides and would have received benefits." *Rula A.-S. v. Aurora Health Care*, No. 2:19-cv-00982-DAO, 2020 WL 7230119, at *2 (D. Utah Dec. 8, 2020) (unpublished); *Island View Residential Treatment Ctr. v. Kaiser Permanente*, No. 1:09-cv-3, 2009 WL 2614682, at *2 (D. Utah Aug. 21, 2009) (unpublished) (venue improper where plaintiffs reside of another state where the ERISA plan contract was breached). Plaintiffs reside in North Carolina, where any breach would have occurred.

Thus venue is proper here only if either Defendant "resides or may be found" in Utah. 29 U.S.C. § 1132(e)(2). Venue is proper under this prong where personal jurisdiction exists over a defendant. *Peay*, 205 F.3d at 1210 n.3; *Brightway Adolescent Hosp. v. Hawaii Mgmt. All. Ass'n*, 139 F. Supp. 2d 1220, 1225 (D. Utah 2001). Thus, this district is a proper

1727966.1

venue only if this Court has personal jurisdiction over Defendants, which it does not. (*Supra*, Argument, Part I).

Because the District of Utah is an improper venue for this action under Section 1132(e)(2), the Court should dismiss this action under Rule 12(b)(3).

## III. In the Alternative, Transfer of this Action to the Middle District of North Carolina is Warranted.

If the Court does not grant dismissal, Defendants respectfully ask the Court to transfer this case to the Middle District of North Carolina under 28 U.S.C. § 1404(a).

### A. Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought…." 28 U.S.C. § 1404(a). In assessing whether to transfer a cause under Section 1404(a), courts consider the following factors:

> plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) (quoting *Tex. Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967)).

**B.      TRANSFER IS PROPER AS THIS CASE HAS NO CONNECTION TO UTAH.**

Respectfully, the Court should transfer this matter to the Middle District of North Carolina because this case has no connection to Utah.

As a preliminary matter, Plaintiffs could have originally filed this action in the Middle District of North Carolina. Blue Cross NC is headquartered in Durham, North Carolina, which is in the Middle District of North Carolina. (Dawson Decl. ¶ 4.) Venue is therefore proper in that district under the first and third prongs of 29 U.S.C. § 1132(e)(2).

Applying the relevant factors establishes that the balance weighs strongly in Defendants' favor of transferring this action to the Middle District of North Carolina.

### 1.      Plaintiffs' Choice of Forum Should Be Given Little Weight.

The Court should afford little, if any, weight to Plaintiff's chosen forum as it has no connection to the operative facts. While courts ordinarily defer to a plaintiff's chosen forum unless the balance of factors weighs strongly in favor of transfer, a plaintiff's choice has less force if the plaintiff does not reside in the district or the forum has little connection with the operative facts of the case. *Richard T.B.*, 2019 WL 145736, at *2; *Island View Residential*, 2009 WL 2614682, at *3.

Plaintiffs' choice of forum is not entitled to deference because (1) Plaintiffs live in North Carolina and (2) their unilateral selection of DMI,[10] an entity in Utah, to author their appeals and Utah counsel to file their Complaint does not establish a sufficient connection. (Compl. ¶¶ 1-3.) That Plaintiffs selected DMI to author their appeals is irrelevant. *See*

---

[10] DMI has no affiliation with Blue Cross NC and the Complaint does not allege that DMI and Defendants had any interaction. (*See* Compl. ¶¶ 3, 20, 32.) Carl Boggs, not DMI, submitted the appeals to Blue Cross NC. (McFall Decl. ¶ 4.)

1727966.1

*Michael M. v. Nexsen Pruet Grp. Med. & Dental Plan*, No. 2:17-CV-1236 TS, 2018 WL 1406600, at *5 (D. Utah Mar. 19, 2018) (unpublished) (the facts had no "material relation or significant connection to Utah" where plaintiff was treated in Utah and a Utah company conducted an external review of the claims); *Island View Residential*, 2009 WL 2614682, at *3 (there was "little or no connection between the operative facts relating to coverage and this forum" where plaintiff was treated in Utah and a claims administrator communicated with the Utah provider). Nor does Plaintiffs' selection of counsel in Utah establish a meaningful connection with Utah. *Danny P.*, 2015 WL 164183, at *2.

### 2. The Relevant Witnesses and Plan Documents Are Most Accessible in the Middle District of North Carolina.

The convenience of witnesses is generally the most important factor. *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1169 (10th Cir. 2010). But, in ERISA cases, this factor "is not as important since a court's review … is generally limited to the administrative record," *Michael M.*, 2018 WL 1406600, at *6. When witnesses are required, "the relevant witnesses in ERISA cases are those involved in administering the plan and denying the claims." *Rula A.-S.*, 2020 WL 7230119, at *4. Generally, a showing of inconvenience requires evidence of (1) the identity and locations of witnesses; (2) "the quality or materiality" of their testimony; and (3) the witnesses' unwillingness to appear at trial, that depositions would be insufficient, or that compulsory process is needed to secure their attendance. *Bartile Roofs*, 618 F.3d at 1169 (quoting *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992)). But, even if a defendant does not provide this information, the Court can make a "common sense conclusion" that "Utah would be an inconvenient forum for

1727966.1

any potential witnesses" when the operative facts occurred elsewhere. *Michael M.*, 2018 WL 1406600, at *6.

Litigating in this district would seriously inconvenience the parties and any witnesses, as no witnesses or documents are in Utah. *David L. v. McGraw-Hill Cos.*, No. 1:13-CV-00176 DS, 2014 WL 1653197, at *2 (D. Utah Apr. 23, 2014) (unpublished) (transfer warranted where "it seems unlikely that any relevant witnesses or supplemental documents will be found in Utah"); *Walter B.*, 2008 WL 11509906, at *2 (transfer warranted where the documentary evidence and proper parties are all in another state). The Boggs Plan is administered in North Carolina, where the Boggs Plan's documents are located. (Dawson Decl. ¶¶ 7, 12.) Blue Cross NC's employees involved in administering the Boggs Plan are in North Carolina. (*Id.* ¶ 21.) Any breach occurred in North Carolina where Plaintiffs reside. (Compl. ¶¶ 1-2.) This factor weighs strongly in favor of transfer.

### 3. The Cost of Making Needed Proof, the Ease of Enforcing a Judgment, and Obstacles to a Fair Trial Weigh in Favor of Transfer.

The total cost of trying this case will be lowest in the Middle District of North Carolina, as all parties to this action are located there.

Any judgment against either Defendant would be easiest to enforce in North Carolina where Defendants are located. *See Michael M.*, 2018 WL 1406600, at *6.

A trial subpoena issued from the District of Utah cannot compel any witnesses located in North Carolina to appear and testify at trial, potentially resulting in an unfair trial. Fed. R. Civ. P. 45(c)(1)(A).

1727966.1

These factors weigh in favor of transfer to the Middle District of North Carolina. *Chrysler Credit*, 928 F.2d at 1516.

### 4. The Middle District of North Carolina's Docket Is Less Congested than the District of Utah's.

The most relevant statistics in considering "the administrative difficulties of court congestion … are the median time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted filings per judge." *Bartile Roofs*, 618 F.3d at 1169.

In the District of Utah, the median time from filing to disposition in civil cases is 10.4 months; there are 527 pending cases per judge; and there are 449 average weighted filings per judge. (*See* Charbonneau Decl. Ex F.) In the Middle District of North Carolina, the median time from filing to disposition in civil cases is 9.0 months; there are 420 pending cases per judge; and there are 384 average weighted filings per judge. (*Id.*) This factor weighs in favor of transfer because the Middle District of North Carolina prevails in all of the known statistics.[11] *Richard T.B.*, 2019 WL 145736, at *4.

### 5. While the Conflicts of Law Factor Is Neutral in a Federal Question Case, if State Law Issues Arise, North Carolina Law Will Govern.

Because this cases involves the application of federal law, "questions arising in the areas of conflicts of law or local law will not occur in this case." *Michael M.*, 2018 WL 1406600, at *6. To the extent state law may apply, the Boggs Plan requires application of North Carolina law. (Dawson Decl. ¶ 12); *Ellis v. Liberty Life Assurance Co. of Boston,*

---

[11] For both of these districts, the median time from filing to trial is unknown. (*Id.*)

958 F.3d 1271, 1275 (10th Cir. 2020) (applying Pennsylvania choice-of-law provision in plan to determine enforceability of a discretion granting provision). Thus, this factor weighs in favor of transfer. *Richard T.B.*, 2019 WL 145736, at *4.

### 6. The Interests of Justice Weigh in Favor of Transfer.

Not only do the above factors weigh strongly in favor of finding that Utah is an inconvenient forum, but the interest of justice also warrant transfer.

"[C]onvenience is not the only policy underlying § 1404(a): the interest of justice in the proper venue should not be forgotten." *Danny P.*, 2015 WL 164183, at *3. Where all of the parties reside in another district, the plan was not administered, adjudicated, or breached in Utah, and all of the operative facts are centered in another locale, the interests of justice "strongly favor" transfer. *Michael M.*, 2018 WL 1406600, at *7; *Walter B*, 2008 WL 11509906, at *2.

The interests of justice strongly favor transfer because (1) *all* parties reside in North Carolina, (2) the plan was administered, adjudicated, and allegedly breached in North Carolina, and (3) all of the operative facts are centered in North Carolina, except for Leah's treatment, which was provided in Colorado, not Utah.

## IV. PLAINTIFFS' CLAIMS ARE SUBJECT TO DISMISSAL UNDER RULE 12(b)(6).

If this Court declines to dismiss for lack of personal jurisdiction or improper venue, Defendants respectfully move the transferee court (or this Court if it declines to transfer) to dismiss the Complaint under Rule 12(b)(6) for failure to state a claim.

1727966.1

## A. LEGAL STANDARDS

Dismissal is warranted if a "complaint, standing alone, is legally insufficient to state a claim on which relief may be granted." *Mark C.v. United Healthcare Ins. Co.*, No. 2:20-cv-00012-DBB, 2021 WL 288578, at *2 (D. Utah Jan. 28, 2021) (unpublished). Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Candace B. v. Blue Cross & Blue Shield of R.I.*, No. 2:19-cv-00039, 2020 WL 1474919, at *3 (D. Utah Mar. 26, 2020) (unpublished) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While factual allegations must be accepted as true, legal conclusions are disregarded. *Kristen W. v. Cal. Physicians Serv.*, No. 2:19-cv-00710-DBB-JCB, 2021 WL 83264, at *2 (D. Utah Jan. 11, 2021) (unpublished).

## B. PLAINTIFFS FAIL TO PLEAD SUFFICIENT FACTS TO STATE A CLAIM FOR DENIAL OF BENEFITS UNDER 29 U.S.C. § 1132(a)(1)(B).

"Section 502 of ERISA provides a civil cause of action for a participant or beneficiary 'to recover benefits due to him *under the terms of the plan*.'" *IHC Health Serv., Inc. v. Central States, Se. & Sw. Areas Health & Welfare Fund*, No. 2:17-CV-01327-JNP-BCW, 2018 WL 3756959, at *3 (D. Utah Aug. 8, 2018) (unpublished) (quoting 29 U.S.C. § 1132(a)(1)(B)). To state a claim for denial of benefits, the "complaint must identify the terms of the plan that would allow the court to reasonably infer that plaintiff is entitled to additional benefits." *IHC Health Serv., Inc. v. Central States, Se. & Sw. Areas Health & Welfare Fund*, No. 2:17-CV-01327-JNP-BCW, 2019 WL 1227932, at *3 (D. Utah Mar. 15, 2019) (unpublished).

1727966.1

Plaintiffs fail to state a claim for denial of benefits because they nowhere identify any provision of the plan that entitles Leah to coverage.

## C. THE COMPLAINT IS DEVOID OF FACTS STATING A PLAUSIBLE CLAIM THAT BLUE CROSS NC IS A PROPER ERISA DEFENDANT OR THAT IT VIOLATED ERISA OR THE PARITY ACT.

Plaintiffs' claims against Blue Cross NC fail because they have not alleged any facts demonstrating that Blue Cross NC is a proper defendant under ERISA.

A participant or beneficiary of a plan governed by ERISA who believes he or she was wrongfully denied benefits may assert a cause of action against the plan itself, a plan administrator, sponsor, or a fiduciary of the plan. *Baker v. Allied Chem. Corp.*, 503 F. App'x 643, 647, 649 (10th Cir. 2012) (affirming dismissal of defendant who was neither an employer or sponsor of the plan, vested with decision-making authority, nor controlled administration of the plan); *Moore v. Berg Enters., Inc.*, 3 F. Supp. 2d 1245, 1248 (10th Cir. 1998) (dismissing denial-of-benefits claim against defendants who were neither plan administrators nor fiduciaries).

Plaintiffs nowhere allege that Blue Cross NC had final decision-making authority or control over the administration of the applicable plan. Indeed, the entirety of Plaintiffs' allegations concerning Blue Cross NC are: the PPO offered by Blue Cross NC provides coverage for Carl and Leah (Compl. ¶¶ 1-2); Blue Cross NC does business in Utah (*id.* ¶¶ 3, 5); Blue Cross NC violated the PPO, ERISA and its regulations, and the Parity Act by failing to provide coverage for Leah's treatment, thereby damaging the Boggs family (*id.* ¶¶ 40-41); and Blue Cross NC is liable for the cost of Leah's treatment and other legal

remedies (*id.* ¶ 42). Absent are any allegations that Blue Cross NC administers the applicable plan.

Because Plaintiffs fail to allege that Blue Cross NC is a proper defendant, the Court should dismiss the claims against Blue Cross NC.

### D. THE PPO IS NOT AN ENTITY CAPABLE OF BEING SUED.

Plaintiffs named Blue Options PPO as a Defendant. The PPO is an insurance product, not an entity that can be sued and certainly not a proper ERISA defendant.

As stated previously, *supra* Part IV.C, a proper ERISA defendant may include the plan or a plan administrator, sponsor, or fiduciary. *Baker*, 503 F. App'x at 647, 649; *Moore*, 3 F. Supp. 2d at 1248. The PPO is none of those things. It is an insurance product. (Dawson Decl. ¶ 9.) Members of the Boggs Plan have access to providers who participate in the PPO through a contract with Blue Cross NC. (*Id.* ¶¶ 10, 13.)

Because Plaintiffs have named an insurance product as defendant instead of the ERISA plan at issue, claims against the PPO should be dismissed.

### E. PLAINTIFFS FAIL TO STATE A PLAUSIBLE PARITY ACT CLAIM.

The Court should dismiss Plaintiffs' Parity Act claim because Plaintiffs' fail to allege sufficient facts to state a claim.

Under the Parity Act, "treatment limitations applicable … to mental health or substance abuse disorders" cannot be "more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage)" or impose "separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits." 29 U.S.C. § 1185a(a)(3)(A)(ii).

1727966.1

To state a Parity Act claim, "a plaintiff must establish [1] that a benefits plan, on its face, discriminates against mental health treatment or coverage, or [2] show that 'the plan is discriminatory in its application.'" *Mark C.*, 2021 WL 288578, at *2 (quoting *Peter E. v. United Healthcare Servs., Inc.*, No. 2:17-cv-00435, 2019 WL 3253787, at *3 (D. Utah July 19, 2019) (unpublished)); *see also Kristen W.*, 2021 WL 83264, at *2. In an "as applied claim," plaintiffs "must allege at least 'some facts' showing that disparate treatment occurred." *Mark C.*, 2021 WL 288578, at *2.

Plaintiffs allege coverage was denied for Leah's treatment at Open Sky for unidentified conditions. (Compl. ¶¶ 2, 17, 19.) Plaintiffs allege "[t]he Plan violated the Parity Act by denying provides [sic] services that are less intensive than acute hospitalization and more intensive than outpatient therapy" and that Blue Cross NC violated the Parity Act by failing to provide coverage for Leah's treatment. (*Id.* ¶¶ 39-40). Nowhere do Plaintiffs even attempt to allege *facts* in support of their claim.

While difficult to follow, Plaintiffs apparently try to identify acute hospitalization and outpatient therapy as analogous medical or surgical benefits. (Compl. ¶ 39.) It is also unclear how outpatient therapy, as opposed to the inpatient treatment Leah received, is a medical or surgical benefit as opposed to another type of mental health or substance abuse treatment. Even assuming this were sufficient to identify medical or surgical analogs to Leah's treatment, Plaintiffs allege no facts to support its claim that Defendants treated these analogs differently.

Courts in this district routinely dismiss Parity Act claims where a plaintiff fails to identify a specific medical or surgical benefit that is analogous to the mental health or

substance abuse treatment at issue or to support with facts the alleged disparity in coverage for treatment. *Mark C.*, 2021 WL 288578, at *3 ("'[G]eneral assertions' of disparate treatment, 'without any details whatsoever' about how United treated comparator medical or surgical claims, are 'insufficient to survive a motion to dismiss.'"); *Kristen W.*, 2021 WL 83264, at *3 (claim failed where plaintiff "made only conclusory statements about the alleged as-applied discrimination"); *Candace B.*, 2020 WL 1474919, at *8 (claim failed where plaintiff did "not identify any specific treatment limitation that BCBSRI applied to [plaintiff's] claim that it would not apply to medical/surgical claims"); *Sarah W. v. CIGNA Health & Life Ins. Co.*, No. 2:19-cv-006229-DB, 2020 WL 1030716, at *2-3 (D. Utah Mar. 3, 2020) (unpublished) (dismissing claim with prejudice where plaintiffs failed to allege facts showing a disparity in application of limitation criteria to plaintiff's inpatient treatment); *Andy B. v. AvMed, Inc.*, No. 2:19-cv-00396-DB-PMW, 2020 WL 838041, at *3 (D. Utah Feb. 20, 2020) (unpublished) (claim failed where no facts demonstrated how defendant evaluated plaintiff's claim as compared to claims for treatment at analogous medical or surgical facilities).

Defendants therefore request that the transferee court (or this Court if it denies the motion to transfer venue) dismiss the Parity Act claim with prejudice.

## CONCLUSION

WHEREFORE, Defendants respectfully requests that the Court dismiss this action under Rules 12(b)(2) and 12(b)(3) or, in the alternative, transfer this action to the U.S. District Court for the Middle District of North Carolina under 28 U.S.C. § 1404(a). If the Court declines to dismiss this action, Defendants respectfully request that the transferee

court (or this Court if it declines to transfer this action) enter an order dismissing the Complaint under Rule 12(b)(6).

DATED this 22nd day of February, 2021.

JONES WALDO HOLBROOK & McDONOUGH PC

/s/ Mark D. Tolman
Mark D. Tolman
Attorneys for Defendants

Chad D. Hansen
KILPATRICK TOWNSEND & STOCKTON LLP
Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of February, 2022, I caused to be delivered, via the Court's electronic filing system, a true and correct copy of the foregoing **MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE OR, IN THE ALTERNATIVE, TO TRANSFER VENUE OR DISMISS FOR FAILURE TO STATE A CLAIM, AND MEMORANDUM IN SUPPORT** to the following:

Eric Nielson
Laura Nielson
Attorneys for Plaintiff
G. ERIC NIELSON & ASSOCIATES
4790 S. Holladay Blvd.
Holladay, UT 84117

/s/ Mark D. Tolman

1727966.1