IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CARL A. BOGGS, III and LEAH BOGGS,

      Plaintiffs,

vs.

BLUE CROSS AND BLUE SHIELD OF
NORTH CAROLINA, and BLUE
OPTIONS PPO,

      Defendants.

Civ. Action No. 1:22-CV-00084

## REDACTED BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Blue Cross and Blue Shield of North Carolina ("Blue Cross NC") and Blue Options PPO ("PPO"), pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rules 7.3 and 56.1, submit this brief in support of their Motion for Summary Judgment.

## INTRODUCTION

In this ERISA denial-of-benefits case, Blue Cross NC properly exercised its discretion to deny benefits for Plaintiff Leah Boggs' treatment at Open Sky Wilderness Therapy ("Open Sky") because Plaintiffs failed to comply with a requirement for coverage and because that level of treatment was not medically necessary.

Despite the plan's clear requirement that Plaintiffs obtain prior approval before admitting Leah to a residential treatment facility, Leah attended Open Sky for over two months and never sought pre-approval. Because the plan provides that it will deny claims for residential services provided without prior authorization, Plaintiffs are not owed the

benefits they seek. Nor can Plaintiffs establish that an emergency excused their failure to obtain approval where Leah did not receive treatment for six to eight weeks after the onset of the supposed "emergency."

And, regardless of the prior authorization requirement, Blue Cross NC did not abuse its discretion in denying Plaintiffs' claim where substantial evidence supports that residential treatment was not medically necessary for Leah. In the administrative process, Plaintiffs presented anecdotal evidence of Leah's symptoms and conditions months or years before her admission, but failed to demonstrate that Leah required residential care at the time she was admitted to Open Sky. Leah's medical records from Open Sky also provide substantial evidence that she could have been treated at a lower level of care and thus the services were not medically necessary.

Finally, the Court should dismiss Plaintiffs' claims against the PPO because it is not a proper defendant. The PPO is an insurance product, not an ERISA plan or fiduciary.

## FACTUAL BACKGROUND

Plaintiff Carl Boggs participates in a health benefit plan sponsored by his employer, Boggs Paving, Inc. (the "Plan"). (*See* R0001.) The Plan's Benefit Booklet explains the benefits available to its members and beneficiaries, including applicable conditions, limitations, and exclusions. (*See* R0007-08.) Mr. Boggs's daughter Leah is a beneficiary of the Plan. (*See* R0145.)

The record offers only vague details of Leah's mental health and substance abuse problems in high school. Her freshman year, Leah was treated for an eating disorder after

2

she began purging. (R1324.) 

(R0742) At unspecified times, Leah reportedly threatened suicide and once was hospitalized in a psychiatric unit.

Sometime in May 2017, ████████████████████████, Leah was arrested for felony assault on a law enforcement officer while drinking. (R1130.) After that, Leah's father retained a consultant in June 2017 to help find her treatment. (R0791.) Leah was not admitted to Open Sky, an alleged residential treatment facility in Colorado, until July 14, 2017. (R0729.) ████████████████████████

██████████████ (R1321.) Plaintiffs did not seek prior authorization for Leah's admission to Open Sky from Blue Cross NC or Magellan Behavioral Health ("Magellan")—the entity responsible for administering the Plan's mental health and substance use disorder benefits. (R0042; R0694.)

Leah remained at Open Sky from July 14, 2017 through September 27, 2017. (R0729.) ████████████████████████

3



)

The Benefit Booklet states, if PRIOR REVIEW and CERTIFICATION[2] for mental health and substance abuse services in a residential treatment facility are not obtained in advance, "**services will be denied.**" (R0042.) Because Plaintiffs did not seek PRIOR REVIEW for Leah's admission to Open Sky, Blue Cross NC denied the claims pursuant to three explanation of benefits ("EOB") documents. (R0672-91.)

On December 13, 2018, Mr. Boggs requested a post-service review asserting that an "emergency" excused the PRIOR REVIEW requirement. (R0694, R0697.) However, Mr. Boggs nowhere explained how Leah's condition was an EMERGENCY, as defined by the Plan, when Leah was not admitted for at least six to eight weeks after the onset of the supposed emergency. A licensed professional counselor/mental health service provider and

---

[1] Leah's therapy records provide minimal information, and some were created or modified in July 2018, long after Leah left Open Sky. (R0692-93, R0766, R0770-80.)

[2] Terms in SMALL CAPITAL LETTERS are defined by the Benefit Booklet.

a board-certified psychiatrist conduced a retrospective review using independent clinical guidelines and determined that Open Sky's services were not medically necessary. (R1067-79.) Magellan notified the Boggs via letter dated March 5, 2019, that Magellan was "unable to authorize" residential treatment. (R0925-26.)

Mr. Boggs challenged the denial via a member appeal (erroneously called a "second-level member appeal") on August 22, 2019. (R1122.) An independent board-certified psychiatrist reviewed the appeal and found that Leah could have been treated at a lower level of care. (R1421-24.) A different board-certified psychiatrist then reviewed the appeal and agreed that Leah could be safely treated at a lower level of care. (R1449.) Magellan upheld the denial in a letter dated September 9, 2019. (R1425.)

Plaintiffs then brought this litigation, which now involves only a single claim for benefits under 29 U.S.C. § 1132(a)(1)(B).

## ISSUES PRESENTED

1.     Whether Plaintiffs were denied benefits owed under the Plan when they did not seek PRIOR REVIEW for Leah's treatment at Open Sky and the Plan provides that such services will be denied without PRIOR REVIEW?

2.     Whether Blue Cross NC abused its discretion in denying Plaintiffs' claims where there is substantial evidence that Leah's symptoms did not require residential treatment and that Leah could have been safely treated at a lower level of care?

5

## LEGAL STANDARD[3]

In an ERISA denial-of-benefits case, an abuse-of-discretion standard applies where "the administrator or fiduciary of an ERISA-covered plan exercises discretionary authority granted by the plan." *Piepenhagen v. Old Dominion Freight Line, Inc.*, 395 F. App'x 950, 954 (4th Cir. 2010). This standard applies here because the Plan gives Blue Cross NC "the authority to use its discretion to make reasonable determinations in the administration of coverage," including "decisions concerning eligibility for benefits, coverage of services, care, treatment, or supplies, and reasonableness of charges." (R0066.)

Thus, the Court cannot "disturb" the denial "if it is reasonable." *Michael M. v. Nexsen Pruet Grp. Med. & Dental Plan*, No. 3:18-cv-00873, 2021 WL 1026383, at *5 (D.S.C. Mar. 17, 2021). A decision is reasonable if it is "the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Piepenhagen*, 395 F. App'x at 954-55. "Substantial evidence" is that "which a reasoning mind would accept as sufficient to support a particular conclusion." *Geiger v. Zurich Am. Ins. Co.*, 72 F.4th 32, 38 (4th Cir. 2023). "The quantum of evidence needed to qualify as 'substantial' is not great; it must be more than a scintilla, but can be less than a preponderance." *Havens v. Metro. Life Ins. Co.*, No. 1:05-1136, 2006 WL 2371117, at *5 (S.D.W. Va. Aug. 14,

---

[3] The Fourth Circuit has not decided whether Rule 52 or Rule 56 applies to a denial of benefits under ERISA that is reviewed for abuse-of-discretion. Regardless, the standard of review is the same—whether the administrator abused its discretion. *Tekmen v. Reliance Standard Life Ins. Co.*, 55 F.4th 951, 961 n.5 (4th Cir. 2022); *Tobey v. Keiter, Stephens, Hurts, Gary & Shreaves*, No. 3:13-CV-315, 2014 WL 61325, at *3 n.2 (E.D. Va. Jan. 7, 2014).

2006). Under this highly deferential standard, a court cannot "reverse merely because it would have come to a different result in the first instance." *Michael M.*, 2021 WL 1026383, at \*5; *Silva v Voya Servs. Co. Emp. Welfare Benefits Plan*, No. 6:19-cv-00318-DCC, 2020 WL 2537454, at \*8 (D.S.C. May 19, 2020).

Plaintiffs have the burden to prove that (1) they were entitled to coverage for the treatment at issue, and (2) Blue Cross NC "acted unreasonably in exercising its discretion to deny benefits." *Michael M.*, 2021 WL 1026383, at \*5 (citing *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 342-43 (4th Cir. 2000)). Plaintiffs cannot satisfy either burden.

## ARGUMENT

### I. Plaintiffs Cannot Show They Were Entitled to Benefits Where They Did Not Comply with the Plan's PRIOR REVIEW Requirement.

Blue Cross NC is entitled to judgment because Plaintiffs failed to comply with the Plan's PRIOR REVIEW requirement and are not entitled to benefits.

Under Section 1132(a)(1)(B), an ERISA plaintiff can "recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B) (emphasis added). "[T]he statutory language speaks of *enforcing* the terms of the plan, not of *changing* them.'" *Hayes v. Prudential Ins. Co. of Am.*, 60 F.4th 848, 852 (4th Cir. 2023). A court should not "depart from the written terms of a contract," particularly "in a case involving ERISA, which places great emphasis upon adherence to the written provisions in an employee benefit plan." *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 56 (4th Cir. 1992).

7

Applying these well-established principles, it is clear that the Boggs were not owed benefits for Open Sky's services because they did not comply with a necessary condition for coverage.

### A. Plaintiffs did not comply with the requirements for the Plan to cover Leah's claims.

Blue Cross NC properly denied Plaintiffs' claims because they failed to comply with the PRIOR REVIEW requirement.

Where prior review is required by the Plan, "compliance with pre-authorization procedures [is] a necessary prerequisite for coverage of services." *City of Hope Nat'l Med. Ctr. v. Seguros de Servicios de Salud de Puerto Rico, Inc.*, 983 F. Supp. 68, 75 (D.P.R. 1997). Accordingly, under ERISA, insurers may deny benefits when a member fails to obtain required prior approval. *Springer v. Cleveland Clinic Emp. Health Plan Total Care*, 900 F.3d 284, 289-90 (6th Cir. 2018); *Renaldi v. Sears Roebuck & Co.*, No. 97 C 6057, 2001 WL 290372, at *5, *8, *12 (N.D. Ill. Mar. 21, 2001).

Here, the Plan plainly required PRIOR REVIEW of Leah's treatment at Open Sky:

> PRIOR REVIEW must be requested and CERTIFICATION must be obtained in advance for mental health and substance abuse services received in a RESIDENTIAL TREATMENT FACILITY…. If PRIOR REVIEW is not requested and CERTIFICATION is not obtained for covered OUT-OF-NETWORK RESIDENTIAL TREATMENT FACILITY services, **services will be denied.**

(R0042.) The Plan specified that "[f]ailure to request PRIOR REVIEW and receive CERTIFICATION **will result in a full denial of benefits.**" (*Id.*)

It is undisputed that Plaintiffs did not seek PRIOR REVIEW before Leah was admitted to Open Sky (or before she was discharged on September 27, 2017). (*See* R0694.) After

8

Open Sky submitted claims for reimbursement on June 15, 2018 (R0178-183), Blue Cross NC sent Plaintiffs EOBs on July 3, July 4, and August 14, 2018, each stating that the claims were denied because the services were "provided without authorization." (R0672-691.) Those denials were in accordance with the Plan's clear requirements. *Renaldi*, 2001 WL 290372, at *12; *City of Hope*, 983 F. Supp. at 75.

Because Plaintiffs failed to meet the Plan's requirements for coverage, they were not owed benefits for those claims.

## B. There is no evidence Leah suffered an EMERGENCY that excused the PRIOR REVIEW requirement.

To avoid their failure to comply with the PRIOR REVIEW requirement, Plaintiffs asserted that an "emergency" excused their noncompliance. (R0694-95, R0697-99.) There is no evidence to support this assertion.

The Benefit Booklet defines an EMERGENCY as:

> The sudden or unexpected onset of a condition of such severity that a prudent layperson, who possesses an average knowledge of health and medicine, could reasonably expect the absence of <u>immediate</u> medical attention to result in any of the following: placing the health of an individual … in serious jeopardy, serious physical impairment to bodily functions, serious dysfunction of any bodily organ or part, or death.

(R0076 (emphasis added).) Further highlighting that an EMERGENCY requires immediate attention, the Plan defines EMERGENCY SERVICES as "items and services furnished or required to screen for or treat an EMERGENCY medical condition <u>until the condition is STABILIZED</u>." (R0076-77 (emphasis added).)

The undisputed facts show that Leah was not admitted to Open Sky to treat an EMERGENCY. Plaintiffs argued in their request for post-service review that ███████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████ (R0697); that ████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████ (R0698); and ███████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████ (*id.*). However, Plaintiffs did not (and cannot) explain how Leah's condition fit the Plan's definition of EMERGENCY.

There is no evidence in the record of a "sudden or unexpected onset of a [serious] condition" in the weeks or months before Leah's admission to Open Sky (let alone in the days before she was admitted). Instead, Plaintiffs posit that Leah's May 2017 arrest was but one event in her protracted history of mental health and behavioral problems. But "a serious condition is not the same as one requiring emergency services." *City of Hope*, 983 F. Supp. at 76; *see also B.R. v. Beacon Health Options*, No. 16-cv-04576-MEJ, 2017 WL 5665667, at *4 (N.D. Cal. Nov. 27, 2017) (a "serious condition does not, in and of itself, show that he qualified for emergency services under the facts alleged").

The events after Leah's arrest, when Mr. Boggs purportedly ███████████

███████████████████████ also show there was no EMERGENCY. (R1130.) After Leah's

10

arrest sometime in May 2017, Mr. Boggs hired a consultant in June to help find treatment for Leah. (*Id.*; R1314.) Leah was not admitted to Open Sky until July 14, 2017 (*See* R1321.) If Mr. Boggs believed Leah needed "immediate medical attention," he would not have waited six to eight weeks after the purported triggering event to have her treated. These facts belie Plaintiffs' claim that anyone could reasonably expect an absence of "immediate medical attention" to endanger Leah.

Furthermore, the Benefit Booklet instructs the member that,"[i]n an EMERGENCY, you should to seek care immediately from an <u>emergency room or other similar facility</u>." (R0030 (emphasis added).) The record contains no evidence that Open Sky acts as an emergency room or similar facility or that it provides EMERGENCY SERVICES.

Moreover, reading the Plan as a whole, Leah's condition was not an EMERGENCY because Plaintiffs could have easily obtained PRIOR REVIEW before Leah's admission to Open Sky. Blue Cross NC will decide a request for PRIOR REVIEW within 15 days. (R0056.) The Plan also provides for "Urgent PRIOR REVIEW" within 72 hours where the treatment cannot await a decision under the standard timeframe. (R0057.) Plaintiffs could have completed this process multiple times over in the at least forty-four days (and more likely sixty days)[4] from the onset of the supposed "emergency" and her admission to Open Sky.

---

[4] Although the date of her arrest is unknown, █████████████████████████████
████████████████████████████████████████████████████████████████████████████

As such, Plaintiffs failed, without excuse, to comply with a precondition for coverage of Plaintiffs' claims by not seeking PRIOR REVIEW. *See City of Hope*, 983 F. Supp. at 76 (finding argument that services were emergency services was "simply absurd"); *Meyers v. Kaiser Found. Health Plan, Inc.*, 807 F. App'x 651, 653-54 (9th Cir. 2020) (finding no emergency where plaintiff had time to search for and identify an out-of-state program in which to enroll her daughter).

Blue Cross NC is entitled to judgment because Plaintiffs cannot show they were entitled to Plan benefits where no EMERGENCY excused the PRIOR REVIEW requirement.

## II.  Blue Cross NC Properly Determined that Open Sky's Services Were Not Medically Necessary.

Plaintiffs also cannot carry their burden to show that Blue Cross NC's denial of their claims for lack of medical necessity was unreasonable or unsupported by substantial evidence.

Plaintiffs have "the burden of demonstrating that residential treatment was medically necessary" and that Blue Cross NC abused its discretion by denying benefits. *Christine S. v. Blue Cross Blue Shield of N.M.*, No. 2:18-cv-00874-JNP-DBP, 2021 WL 4805136, at *6 (D. Utah Oct. 14, 2021); *Michael M.*, 2021 WL 1026383, at *5. The question is not whether Leah "needed care," but whether she needed the level of care at issue. *Christine S.*, 2021 WL 4805136, at *4.

In applying the abuse-of-discretion standard, courts "may consider non-exclusive factors," including:

(1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.[5]

*Silva*, 2020 WL 2537454, at *8 (citation omitted). Application of the relevant factors shows

Blue Cross NC did not abuse its discretion.

### A. The Plan's definition of MEDICAL NECESSITY supports the denial of benefits.

The Plan defines "MEDICALLY NECESSARY (or MEDICAL NECESSITY)" as:

COVERED SERVICES or supplies that are:

a) Provided for the diagnosis, treatment, cure, or relief of a health condition. illness, injury, or disease; …

b) Necessary for and appropriate to the diagnosis. treatment, cure, or relief of a health condition, illness, injury, disease, or its symptoms,

c) Within generally accepted standards of medical care in the community, and

d) Not solely for the convenience of the insured, the insured's family, or the PROVIDER.

---

[5] Although a structural conflict of interest exists where the administrator with discretionary authority also insures the plan, the standard of review does not change. The conflict is but one factor to be considered and, absent evidence of bad faith, it carries very little weight. *Michael M.*, 2021 WL 1026383, at *9. Here, there is no evidence of any bad faith by Blue Cross NC.

13

(R0079.) The Plan allows Blue Cross NC to "compare the cost-effectiveness of alternative services, settings or supplies when determining which of the services or supplies will be covered and in what setting medically necessary services are eligible for coverage." (*Id.*)

Here, Magellan reasonably concluded—consistent with the Plan's terms—that Leah did not need residential treatment and could be safely treated at a lower level of care. (R0949; R1427.) In its post-service review, Magellan determined Leah's symptoms did not require a 24/7 treatment facility because she was reportedly able to care for her physical needs, was not at risk of being dangerous to herself or others, lived somewhere that provides the help she needed, and had symptoms that could be safely treated at a lower level of care. (R0949.) Similarly, on appeal, Magellan determined that, "[a]t the time of admission," ███████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████ (R1427.)

This determination was supported by the evidence of Leah's condition prior to her admission, consisting of letters from a treating professional and a consultant and vague reported facts from Leah and her parents.

Plaintiffs submitted a letter from Robert Adelman, a licensed social worker ████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

14

█████████ (R0789.) Yet, he nowhere suggests that he considered whether a lower level of care, such as an intensive outpatient program, could have effectively treated Leah.

Plaintiffs also submitted an undated letter from Ashley Barbour, a therapeutic and educational consultant hired in June 2017 to help find treatment for Leah.[6] (R0791-92, R1314-15.) Ms. Barbour ████████████████████████████████████

████████████████████████████████████████████████

███████████████████████ (R0791 (emphasis added).) But the question is not whether Leah's treatment at Open Sky would be beneficial, but whether it was necessary. *Josef K. v. Cal. Physicians' Serv.*, 477 F. Supp. 3d 886, 900 (N.D. Cal. 2020). (upholding denial where treating physicians opined that residential treatment would be "beneficial"); *Julie L. v. Excellus Health Plan, Inc.*, 447 F. Supp. 3d 38, 51 (W.D.N.Y. 2020) (upholding denial where treating providers suggested treatment would be beneficial but did not show he "could not be managed at a lower level of care").

Similarly, Plaintiffs' anecdotal reports of Leah's prior problems and treatments fail to establish that treatment at Open Sky was necessary. Leah or her parents reported that Leah:

- ████████████████████████████████ (R0742);

- ████████████████████████████████████

---

[6] Ms. Barbour does not appear to have any licensure that qualifies her to opine on symptoms, severity, or appropriate treatment. (*See* R0791-92.)

15

███████████████████ (R0740, R0743; R1137; R1335);

- ███████████████████ (R0743; R1130; R1134; R1136; R1335; R1381);

- during her freshman year, began purging and was treated for an eating disorder at a residential treatment center before attending outpatient treatment in North Carolina (R0743; R1012; R1060; R1129; R1335);

- began using alcohol her freshman year, ████████████████ ██████████████;

- █████████████████████████████████████████ ████████████████████" and "was hospitalized at the Psychiatric Unit of Carolinas Medical Center" at some point (R0742; R0789; R1130);[7]

- threatened suicide on several unspecified occasions ███████████ ███████████ (*id.*; R0698; R0739; R0741-43; R0788; R1131-32); and

- was arrested for a felony while under the influence of alcohol in May 2017 (R0742-43, R0789, R0791).

Plaintiffs provided no objective evidence of these incidents or prior treatment; they simply stated they occurred. *See M.Z. v. Blue Cross Blue Shield of Ill.*, No. 1:20-cv-00184-RJS-CMR, 2023 WL 2634240, at *7, *14 (D. Utah Mar. 24, 2023) (crediting contemporaneous medical records showing a lack of medical necessity over reported past incidents not documented in the record); *Utah Alcoholism Found. v. Battelle Pac. Nw. Labs.-Non-*

---

[7] The record is unclear on when █████████████████████ occurred or whether these anecdotes refer to the same or separate incidents. Leah's mother reported in 2017████████████████████████ (R1136; R1334.) But Plaintiffs do not offer any other dates for ███████████████.

16

*Bargaining Unit Emps.' Comprehensive Med. Benefits Plan*, 204 F. Supp. 2d 1295, 1306 (D. Utah 2002) (no abuse of discretion where record did not provide details of current outpatient treatment or indicate intensive outpatient program was considered before admission).

Nevertheless, these reported events that occurred months or years before Leah's admission to Open Sky do not show that residential treatment was necessary when she was admitted. *See Jonathan Z. v. Oxford Health Plans*, No. 2:18-cv-00383-JNP-JCB, 2022 WL 2528362, at *14 (D. Utah July 7, 2022) (concluding ███████████████████████ ██████████████ and a "run-in with law enforcement ████████████████ a month before admission did not support medical necessity). This is particularly true where the record does not reveal any negative symptoms or behaviors between the May 2017 arrest and Leah's admission to Open Sky and, in fact, ████████████████████████████ ███ (R1334). *See Utah Alcoholism Found.*, 204 F. Supp. 2d at 1306-07 (evidence plaintiff ████████████████████████████████████ supported finding that treatment was not medically necessary).

In contrast, Leah's treatment records from Open Sky show ████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████

[redacted] These contemporaneous records do not demonstrate that Leah required residential treatment. *Jonathan Z.*, 2022 WL 2528362, at *14.

Substantial evidence supports Magellan's decision that treatment at Open Sky was not necessary because Leah could have been treated at a lower level of care, such as partial hospitalization or "intensive therapy services," which is consistent with the Plan's definition of MEDICAL NECESSITY. (R0042.)

## B. Magellan considered adequate materials and used a principled, reasoned decisionmaking process in denying benefits.

In both the post-service review and first-level appeal, Magellan followed a rigorous process in which multiple medical reviewers took into account Plaintiffs' evidence. These factors support that the denials were reasonable and supported by substantial evidence.

In the post-service review, a licensed professional counselor/mental health service provider reviewed Plaintiffs' materials and concluded the residential guidelines for admission were not met. (R0804.) The clinical summary shows a thorough review of Plaintiffs' evidence as it referenced facts from Leah's treatment notes and [redacted]. (*Compare* R0735-36; R0739-44; R0750-52; R0788, *with* R0804.) Dr. Candice Tate, a board-certified psychiatrist licensed in North Carolina, reviewed the claims before also concluding that Leah did not meet the guidelines for admission. (R0807-08; R1076.)

18

Magellan communicated its non-authorization decision to Plaintiffs through a letter that identified the Plan's medical necessity requirement, identified the guidelines used, provided the clinical rationale for why Leah's treatment was not MEDICALLY NECESSARY (i.e., she did not meet the requirements for residential treatment and could have been treated at a lower level of care), and explained to Plaintiffs their appeal rights.[8] (R1152-60.)

Plaintiffs' first-level appeal was then reviewed by Dr. Diana Antonacci, a North Carolina-licensed board-certified psychiatrist employed by PREST and Associates ("PREST"), an independent review organization. (R1421-23). Dr. Antonacci reviewed the "Medical records as provided, correspondence and documents related to the appeal" (R1421) and prepared a comprehensive case summary that addressed the evidence Plaintiffs submitted (*compare* R1314; R1316-17; R1321; R1330-35, *with* R1421-22). Dr. Antonacci found that ███████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████. (R1423.)

After Dr. Antonacci's review, Dr. LaShondra Washington, a North Carolina-licensed board-certified psychiatrist, reviewed Plaintiffs' documentation and agreed that ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████

---

[8] Although Plaintiffs did not receive Magellan's decision on the request for post-service review until March 5, 2019, Plaintiffs were no prejudiced by this delay and were able to submit a first-level appeal thereafter.

███████████████████████.[9] (R1449.) Magellan then promptly notified Plaintiffs of its decision. (R1425.)

Four separate medical professionals reviewed Plaintiffs' claims and determined that Leah's treatment at Open Sky was not medically necessary. Courts routinely find similar decision-making processes to be reasoned and principled and not an abuse of discretion. *Michael M.*, 2021 WL 1026383, at *8-9; *Silva*, 2020 WL 2537454, at *9; *Chipman v. Cigna Behavioral Health, Inc.*, 480 F. Supp. 3d 174, 182 (D.D.C. 2020).

### C.    Relevant external standards support the denial of benefits.

In reviewing Plaintiffs' claims, Magellan applied the MCG Guidelines. (R0949; R1427.) The MCG Guidelines for Residential Behavioral Health, Level of Care, Adult, apply because Leah was over eighteen at the time of her admission to Open Sky on July 14, 2017. (*See* R1321.)

Under the guidelines' relevant portions, admission to a residential treatment center is appropriate only if ███████████████████████



_____

[9] To the extent Plaintiffs contend that the reviewers did not consider adequate materials because the denial letter and PREST report reference the MCG residential guidelines for a child or adolescent, rather than the adult or geriatric guidelines (R1423; R1427), this argument lacks merit. The relevant considerations are nearly identical in the adult/geriatric and child/adolescent guidelines. (R1451; R1490; R1495). More importantly, as explained below, Leah did not satisfy either set of guidelines for admission. *see infra* Part II.C. Thus, even if the wrong guidelines were considered, there was no abuse of discretion. *Pagnozzi v. JP Morgan Chase & Co.*, No. 15-21249-CIV-GRAHAM/SIMONTON, 2016 WL 2735677, at *10 (S.D. Fla. May 5, 2016).

20

█████████████████████████████████████████████████████████████████

(R1451-52.)

████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████ (R1452.)

Plaintiffs' submissions demonstrate that substantial evidence supports Magellan's

determination that Leah did not meet the criteria for admission.

First, there is no evidence Leah ███████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████ (R1464.) ████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

(R1488.) ██████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████ (*see* R1314-15; R1317-18; R1321-72).

Second, there is no evidence that Leah was ███████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████ (R1463.) As noted above, ██████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████ (R1468.) Further, although Leah was charged with felony assault on a law enforcement officer, ████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████████████ (R1335.)

Third, there is no evidence that Leah experienced ████████████████████ ███████████████████████████████████[11] (R1484.) It was thus not unreasonable for Magellan to conclude Leah did not satisfy this requirement where,



---

[10] The differences in the child/adolescent guidelines for the definitions of ████████████ ████████ are only implicated when the patient ██████████████████████████████ ██████ (R1498-99.) Because there is no evidence Leah ███████████████████████ ████████████████ those differences are not implicated.

[11] ███████ Rather than considering ████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████████ (R1484-85.) ████████████████████████ ██████████████████████████████████████████████████████.
(R1334.) This is not indicative of an inability to perform adequately.



. (R1331-36; R1483.)

There is simply no evidence that, after May 2017, at the time of her admission, or during her treatment at Open Sky, Leah experienced any severe symptoms, engaged in any dangerous behaviors, or had any other concerning behaviors or incidents. Although Plaintiffs' evidence is indicative of Leah having mental health and substance abuse issues that required treatment, there is no evidence that Leah needed to receive residential treatment as opposed to other intensive outpatient treatment, which is the decision Plaintiffs challenge. *M.Z.*, 2023 WL 2634240, at *14 (applying MCG guidelines and concluding admission criteria were not met notwithstanding ████████████████████████ ██████████████████████████████); *Hurst v. Siemens Corp. Grp. Ins.*, 42 F. Supp. 3d 714, 729-30 (E.D. Pa. 2014) (upholding denial of benefits where patient █████ ██████████████████████████████).

III.     <u>The Court Should Dismiss the Claims Against the PPO Because It Is an Insurance Product.</u>

The Court should grant judgment to the PPO because it is not a proper ERISA defendant.

23

As shown in the group contract and Benefit Booklet, the Blue Options PPO is a preferred provider organization, i.e., a network of providers that contract with Blue Cross NC to provide healthcare services to members of health plans. (R0022 (discussing providers in the Blue Options 1-2-3 network); R0111 (explaining the relationship with in-network providers).) The Plan is the Boggs Paving, Inc. employee benefit plan. (*See* R0095; R0097.) There is no evidence Blue Options 1-2-3 is the plan or is capable of being sued.

The Court should therefore dismiss the PPO from the litigation. *Cf. Pensado v. Life Ins. Co. of N. Am.*, No. 1:19-CV-157-LY, 2019 WL 4889807, at *3 (W.D. Tex. Oct. 3, 2019) (dismissing claims against policy document); *Sanborn-Alder v. Cigna Grp. Ins.*, No. H-09-0806, 2010 WL 11586610, at *7, *15 (S.D. Tex. Jan. 26, 2010) (dismissing claims against registered service mark); *Campbell v. CIGNA Grp. Inc.*, No., 2:12-cv-00443, 2012 WL 2403396, at *3 (W.D. Pa. June 26, 2012) (same).

Even if Plaintiffs named the Plan, it would not be a proper defendant because the Plan is fully insured, i.e., it holds no assets to pay a successful ERISA claim. *Am. Med. Sec., Inc. v. Bartlett*, 915 F. Supp. 740, 742 (D. Md. 1996) ("A fully insured plan purchases a group health insurance policy in order to fund its benefits."). Instead, it is dependent on an insurance contract.

Because the PPO is an insurance product, not the Plan, the Court should dismiss the claim against it.

24

## **CONCLUSION**

For the reasons stated herein, the Court should grant judgment in Defendants' favor.

Respectfully submitted this the 22nd day of December, 2023,

KILPATRICK TOWNSEND & STOCKTON LLP

/s/ Whitney R. Pakalka
Chad D. Hansen
N.C. State Bar No. 32713
Whitney R. Pakalka
N.C. State Bar No. 52611
1001 West Fourth Street
Winston-Salem, NC 27101-2400
Telephone: 336-607-7397
Facsimile: 336-458-9421
chadhansen@kilpatricktownsend.com
wpakalka@kilpatricktownsend.com

*Attorneys for Defendant Blue Cross and Blue Shield of North Carolina and the Blue Options PPO*

25

## CERTIFICATE OF WORD COUNT

The undersigned attorney hereby certifies that this Brief complies with LRs 7.3(d)(1) and 56.1(c) with respect to its length. This Brief was created using Microsoft Word. Based upon the word count of Microsoft Word, this Brief contains less than 6,250 words exclusive of the caption, signature block, Certificate of Service and this Certification of Word Count.

Respectfully submitted, this the 22nd day of December, 2023.

KILPATRICK TOWNSEND & STOCKTON LLP

/s/ Whitney R. Pakalka
Chad D. Hansen
North Carolina State Bar No. 32713
Whitney R. Pakalka
North Carolina State Bar No. 52611
1001 West Fourth Street
Winston-Salem, NC 27101-2400
Telephone: 336-607-7397
Facsimile: 336-458-9421
chadhansen@kilpatricktownsend.com
wpakalka@kilpatricktownsend.com

*Attorneys for Defendant Blue Cross and Blue Shield of North Carolina and the Blue Options PPO*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of December, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

KILPATRICK TOWNSEND & STOCKTON LLP

/s/ Whitney R. Pakalka
Chad D. Hansen
North Carolina State Bar No. 32713
Whitney R. Pakalka
North Carolina State Bar No. 52611
1001 West Fourth Street
Winston-Salem, NC 27101-2400
Telephone:  336-607-7397
Facsimile:  336-458-9421
chadhansen@kilpatricktownsend.com
wpakalka@kilpatricktownsend.com

*Attorneys for Defendant Blue Cross and Blue Shield of North Carolina and the Blue Options PPO*